# UNITED STATES DISTRICT COURT

### EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MADLYN SCOTT, on behalf of D.S., a minor,<br><br>    Plaintiff,<br><br>  v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>    Defendant. | Case No.  1:16-cv-00564-SAB<br><br>ORDER GRANTING IN PART PLAINTIFF'S SOCIAL SECURITY APPEAL, DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, AND REMANDING FOR FURTHER ADMINISTRATIVE PROCEEDINGS<br><br>(ECF Nos. 13, 14, 15) |

## I.

## INTRODUCTION

Plaintiff Madlyn Scott ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying the application for supplemental security income for her child, D.S. ("D.S.") under the Social Security Act.  The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to Magistrate Judge Stanley A. Boone.[1]

D.S.'s impairments include attention deficit-hyperactivity disorder (ADHD), learning disorder, and depression.  For the reasons set forth below, Plaintiff's appeal from the

---

[1] The parties have consented to the jurisdiction of the United States Magistrate Judge.  (See ECF Nos. 9, 12.)

administrative decision of the Commissioner is granted in part.

## II.

### FACTUAL AND PROCEDURAL BACKGROUND

On May 24, 2012, an application for supplemental security income was protectively filed on behalf of D.S., with an alleged disability beginning on March 1, 2012. (AR 174-83.) The application was denied initially on January 14, 2013, and on reconsideration on June 12, 2013. (AR 121-27.) Plaintiff and D.S. requested and received a hearing before Administrative Law Judge Catherine R. Lazuran ("ALJ"). Plaintiff and D.S. appeared for a video hearing on August 11, 2014. (AR 38-98.) On November 21, 2014, the ALJ issued a decision finding D.S. was not disabled. (AR 19-32.) On March 4, 2016, the Appeals Council denied the request for review (AR 1-5.)

#### A.    Hearing Testimony

Plaintiff and D.S. appeared with their counsel at a video hearing before the ALJ on August 11, 2014. (AR 38-71.) D.S. testified as follows:

She was eleven years old at the time of the hearing. (AR 43.) She has two older sisters and one younger brother. (AR 44.) She just finished fifth grade and somewhat likes school. (AR 44.) Her favorite subject is writing and she somewhat likes to read. (AR 44.) Her grades were Cs and Ds in the 2013-2014 school year. (AR 45.) She received Ds in math. (AR 45.) The school is concerned about her grades. (AR 51.) She is in regular classes, except for English, which she is in an ELD class, which is a lower learning class that is supposed to help her increase her grades. (AR 45, 51.) She started it during the 2013-2014 school year and it is somewhat helping her. (AR 45.) She wants to be a writer when she grows up. (AR 50.)

She is unable to pay attention in school because she gets easily distracted. (AR 45, 50-51.) She talks while the teacher is talking even though the teacher tells her not to. (AR 51.) She often does not do her homework because she does not pay attention in class and does not know the answers. (AR 45-46.) She does not always ask her mother to help her with her homework because she does not think it is important. (AR 46.) Her mother tries to oversee D.S. and help her finish or see that she finishes it. (AR 46.)

She can watch television shows until her bedtime.  (AR 46.)  She can watch TV for 30 or 60 minutes at a time.  (AR 46-47.)  She says she does not go to movies all the time.  (AR 47.)  Her mother reads to her and she is not able to pay attention all the time because she does not think it is important.  (AR 47.)  She can run, roller-skate, and bicycle, but cannot swim.  (AR 48-49.)  She can write in cursive, get dressed on her own, take a shower or bath on her own, and make a sandwich or use a microwave.  (AR 48.)  Sometimes she chooses her own clothes in the morning and other times her mother or sister helps her.  (AR 48.)  Sometimes she sweeps the house and cleans her room, but she sometimes has to be reminded.  (AR 48-49.)

She has friends and she sees them outside of school.  (AR 47.)  She attends other children's birthday parties.  (AR 47.)  She does not always get along with her siblings, and specifically her older sister.  (AR 47-48.)  She sometimes gets along with her mother.  (AR 48.)

She takes medicine and she knows that it helps her.  (AR 49.)  She has one medication that she takes at bedtime that makes her drowsy so that she can sleep better.  (AR 49.)  She takes a medication in the morning that helps her focus.  (AR 49.)  She is taking more medication than she used to.  (AR 52.)  Sometimes the medication works when she lets her "pill kick in," but other times it does not work when she is not listening.  (AR 52.)  She sees a doctor for the medication and she sees a counselor outside of school.  (AR 51.)  Her counselor from the mental health clinic comes to her school once a week and talks to all the kids that are treated.  (AR 51-52.)  She thinks that it helps.  (AR 52.)

She missed much school in the 2013-2014 year because of her behavior.  (AR 49.)  She does not know how much she missed.  (AR 49-50.)  She has been suspended for her behavior, which included acting out and shouting, but she does not know how many times.  (AR 50.)  Sometimes she tries to stop her behavior, and sometimes she gives up.  (AR 50.)

Plaintiff also testified at the hearing.  She testified as follows:

She has lived with D.S. for D.S.'s whole life.  (AR 53.)  She works thirty hours a week as an instructional aide at a different grade school from the one D.S. attends.  (AR 53-54.)  D.S.'s siblings are 18, 14, and 6.  (AR 54.)  D.S. started the ELD class around 2010 and Plaintiff thinks that D.S. is in it 3 or more days for 1 hour each day.  (AR 54.)  D.S. is in regular classes, except

1  for the ELD class.  (AR 56.)  An after-school program helps D.S. with her homework.  (AR 56.)

2  Plaintiff checks to see if D.S. gets her homework done, but D.S. only gets it done sometimes.

3  (AR 56.)   Plaintiff asked D.S. if she needed help and she would say no, but then Plaintiff

4  received phone calls from the teacher saying that D.S. had not done her homework.  (AR 56.)

5  After receiving the phone calls, Plaintiff is not always more careful because she is tired.  (AR

6  57.)

7       When asked about what D.S.'s school says about her grades, Plaintiff testified that they

8  do not really tell her much.  (AR 63-64.)  The school "really tr[ies] with her" by taking her out of

9  class and giving her extra help.  (AR 64.)  She says that D.S.'s behavior and social skills are the

10  focus instead of academics at this time.  (AR 64.)  Plaintiff testified that D.S.'s conduct grade

11  improved because she has a very lenient teacher who really wanted D.S. to succeed.  (AR 66.)

12       D.S. does not have an I.E.P.  (AR 55.)  Plaintiff attempted to put in a request to the

13  school district the year before, but they told her to put the request in when school starts.  (AR

14  55.)  However, she did not have the time to put the request in.  (AR 55.)  The vice principal

15  suggested to Plaintiff that she put a request in for an IEP for D.S., but she has not had the time.

16  (AR 55.)  As far as Plaintiff understands it, she has to put the request in for an IEP.  (AR 55.)

17       Plaintiff said D.S. had approximately five to six suspensions in the 2013-2014 school

18  year, and then later in the hearing, said four or five out-of-school suspensions.  (AR 57, 74.)

19  D.S. had approximately ten suspensions in the 2012-2013 school year.  (AR 57.)  D.S. was

20  medicated at the time of the suspensions.  (AR 64.)  Plaintiff testified that she did not request

21  D.S.'s suspension records, bring those, or send them to her counsel.  (AR 57.)  The vice principal

22  has called Plaintiff on several occasions to pick D.S. up, but because Plaintiff was working, she

23  could not.  (AR 57.)  It was bad enough that two times in the 2013-2014 year and four times in

24  the 2012-2013 year, the vice principal was willing to bring D.S. home herself, but because

25  Plaintiff was at work, that did not happen.  (AR 57-58.)

26       Plaintiff testified that the school really tries to be lenient with D.S. and they try their best

27  not to suspend D.S. unless it is really serious.  (AR 63.)  D.S.'s last incident at school was the

28  May 21, 2014 incident, which was the last day D.S. went to school.  (AR 64-65.)  D.S. was not

1    allowed to attend the last two days of school when they were having a party because of her

2    behavior.  (AR 65.)  Some of D.S.'s incidents have involved violence, which D.S. also exhibits

3    at home.  (AR 66.)

4             When asked why the attendance records do not reflect that number of out-of-school

5    suspensions because there are only three absences all year, Plaintiff stated that she believed that

6    the school considered out-of-school suspensions as absences and that D.S. was only absent

7    because of her behavior.  (AR 74.)  The only times that D.S. missed school during the 2013-2014

8    school year were when she was suspended.  (AR 62.)  Plaintiff testified that D.S. would go back

9    to school the next day.  (AR 74.)

10            D.S. receives counseling at Clinica Sierra Vista Behavioral Center, also known as Kern

11   County Mental Health.  (AR 58.)  She last attended counseling about two weeks before the

12   hearing.  (AR 59.)  Plaintiff started D.S. at Clinica Sierra Vista because D.S. was verbally

13   suicidal, which has declined.  (AR 65.)

14            D.S. is on Clonidine, Strattera, Risperidone, and another medication.  (AR 59.)  A couple

15   of the medications are to help D.S. focus and to settle down.  (AR 59.)  She has been on the

16   medications for at least four months.  (AR 59.)  The medications are prescribed by Dr. Bright at

17   Clinica Sierra Vista.  (AR 60.)  The only side effect to the medications is drowsiness, which is at

18   morning and night, but more so at night.  (AR 60.)  D.S. takes her medication in the morning and

19   at night.  (AR 61.)  D.S. takes something for sleep. (AR 60.)  The doctor has increased the

20   medication several times, which has helped "little by little."  (AR 60.)  Plaintiff is nervous for

21   D.S.'s upcoming school years because there will be older kids at middle school.  (AR 65.)

22            D.S. is unable to pay attention when Plaintiff reads to her or when D.S. is at home.  (AR

23   60.)  She very rarely gets along with other children and has few friends.  (AR 61.)  The only

24   friends she sees outside of school are the friends that reside in their apartment complex.  (AR

25   61.)  D.S. gets along with her siblings on few occasions.  (AR 61.)  When D.S. does not take her

26   medication, she is very sporadic, very loud, and easily agitated.  (AR 61.)  D.S. takes her

27   medication daily, but the timeframe is not consistent because she receives it later during summer.

28   (AR 61-62.)  Plaintiff has to tell D.S. several times to do her chores, and when she does, it is

1  very little and with conflict.  (AR 62.)

2  Medical Expert Dr. Nancy Winfrey also testified.[2]  She testified as follows:

3  She is licensed in clinical psychology.  (AR 73.)  She testified that she did not notice any

4  conflicts in the medical evidence, but later testified that D.S.'s GAF of 33 does not match the

5  record. (AR 78, 93-94.)  She testified that her client with a GAF of 33 would be in the hospital.

6  (AR 93-94.)  She opined that D.S. has a depressive disorder, not otherwise specific, and ADHD.

7  (AR 78.)  She does not think that D.S. meets or equals any Listing.  (AR 79.)

8  She found that D.S. was less than marked in acquiring and using information, because her

9  general aptitude or I.Q. is in the moderate range, which is above the marked range.  (AR 79.)

10  D.S. had a full-scale score of 78 with her adaptive functioning and her daily living skills and

11  communicative skills level is in the average range.  (AR 79-80.)  She also considered that D.S.

12  does not have an IEP.  (AR 80.)  She testified that the school can initiate an IEP.  (AR 80.)

13  D.S.'s grades were pretty bad, but are getting better.  (AR 80.)  D.S.'s grades may be affected by

14  ADHD, especially if it is not fully treated.  (AR 80-81.)  She testified that D.S.'s grades may go

15  up if she has more finely tuned treatment for ADHD.  (AR 81.)

16  She opined that D.S. was marked in attending and completing tasks.  (AR 81.)  She

17  testified that she does not think that D.S. is getting the full benefit from treatment because it does

18  not seem to be working that well and her social behavior is affected.  (AR 81.)

19  She found that D.S. was less than marked in interacting and relating with others.  (AR 81-

20  82.)  She testified that she did not see very much serious intervention by the school and/or

21  family.  (AR 82.)  The school had not put together an IEP or even a 504 plan.  (AR 82, 86.)  It

22  does not look like there has been much treatment with the family other than medication

23  management.  (AR 82.)  She assessed this rating because of D.S.'s discipline problems at school

24  and behavior at home.  (AR 82-84.)  She did not rate this category marked because it does not

25  look like in the school's view it is at the marked degree.  (AR 86.)  She also said that she does

---

26
27  [2] Prior to Dr. Winfrey's testimony, the ALJ summarized Exhibit 13E, which Dr. Winfrey did not have.  (AR 66-69, 73.)  Plaintiff and D.S.'s counsel also added to the ALJ's summary.  (AR 69-73.)  The ALJ also discussed Exhibit 5F with Dr. Winfrey because Dr. Winfrey did not have that exhibit, but it was discovered that Exhibit 5F had 28  duplicate records in Exhibit 2F, which Dr. Winfrey had.  (AR 75-76.)

not have any treatment records, which can be another way to assess that. (AR 86-87.) Also, she considered that both D.S. and Plaintiff said that D.S. has some friends. (AR 87.) Other considerations were that there have not been any legal problems and "other things" that she looked at that D.S. does not have. (AR 87.) She does not have a specific number of incidents of fighting, biting, cursing, disrespect, and walking out of classrooms that would qualify as a marked limitation. (AR 87-88.) She considers the degree of the incidents and the frequency and the school's response. (AR 88.) She indicated that a school typically instigates an IEP when they see that things are in the very serious range. (AR 88.)

She found that D.S. has no limitation for manipulating objects. (AR 82.) She found that D.S. was less than marked in caring for self. (AR 82.) D.S.'s suicidal ideation is reflected in that rating. (AR 82-83.) She does not rate health and physical well-being because she is not a physician. (AR 83.) She did not notice any problems with compliance with medical treatment. (AR 83.)

She put less stock in the assessment by Dr. Gary Bartell during the comprehensive psychiatric evaluation because the language was similar to the mental status medical source statement used for adults and not developmentally appropriate for a child. (88-93.) She disagreed with Dr. Bartell's consultative examination and the GAF finding of 33 because of the school and school records. (AR 96.) She noted that there is no IEP for a behavioral plan and she found that D.S. had some strengths that other kids might not have. (AR 96.) She noted that the basis of D.S.'s social difficulties were from the ADHD, which she does not think has been fully treated. (AR 96.)

## B. ALJ's Findings

The ALJ made the following findings of fact and conclusions of law:

- D.S. was born on May 8, 2003. Therefore, she was a school-age child on May 24, 2012, the date the application was filed, and is currently a school-age child;

- D.S. has not engaged in substantial gainful activity since May 24, 2012, the application date;

- D.S. has the following severe impairments: ADHD, learning disorder, and a depressive

7

1   disorder;

2   • D.S. does not have an impairment or combination of impairments that meets or medically

3   equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1;

4   • D.S. does not have an impairment or combination of impairments that functionally equals

5   the severity of the listings; and

6   • D.S. has not been disabled, as defined in the Social Security Act, since May 24, 2012, the

7   date the application was filed.

8   (AR 19-32.)

9                                      **III.**

10                              **LEGAL STANDARD**

11   Congress has provided that an individual may obtain judicial review of any final decision

12   of the Commissioner of Social Security regarding entitlement to benefits.  42 U.S.C. § 405(g).

13   In reviewing findings of fact in respect to the denial of benefits, this court "reviews the

14   Commissioner's final decision for substantial evidence, and the Commissioner's decision will be

15   disturbed only if it is not supported by substantial evidence or is based on legal error."  Hill v.

16   Astrue, 698 F.3d 1153, 1158 (9th Cir. 2012).  "Substantial evidence" means more than a

17   scintilla, but less than a preponderance.  Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996)

18   (internal quotations and citations omitted).  "Substantial evidence is relevant evidence which,

19   considering the record as a whole, a reasonable person might accept as adequate to support a

20   conclusion."  Thomas v. Barnhart, 278 F.3d 947, 955 (9th Cir. 2002) (quoting Flaten v. Sec'y of

21   Health & Human Servs., 44 F.3d 1453, 1457 (9th Cir. 1995)).

22   "[A] reviewing court must consider the entire record as a whole and may not affirm

23   simply by isolating a specific quantum of supporting evidence."  Hill, 698 F.3d at 1159 (quoting

24   Robbins v. Social Security Administration, 466 F.3d 880, 882 (9th Cir. 2006).  It is not this

25   Court's function to second guess the ALJ's conclusions and substitute the court's judgment for

26   the ALJ's.  See Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) ("Where evidence is

27   susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be

28   upheld.").

1

# IV.

2

## DISCUSSION

3        Plaintiff raises three issues in this appeal.  Plaintiff argues that the ALJ erred: (1) by

4    failing to have a medical expert review D.S.'s file in its entirety; (2) in discounting Dr. Bartell's

5    opinion; and (3) by discrediting D.S. and Plaintiff.  Defendant counters that the ALJ properly

6    developed the record, the ALJ properly evaluated Dr. Bartell's opinion, and the ALJ properly

7    evaluated credibility.

8        **A.      The Matter Should be Remanded Based on the Review of the Evidence by**
         **Dr. Winfrey**

9

10       Plaintiff argues that medical expert, Dr. Winfrey, did not have the benefit of reviewing

11   the disciplinary records that are exhibit 13E and reviewing the IEP records that were added to the

12   administrative record by the Appeals Council as exhibit 15E.  Plaintiff contends that the

13   Commissioner did not make a reasonable effort to seek a case evaluation based on the record in

14   its entirety because no doctor reviewed the IEP evidence.  Defendant counters that the ALJ made

15   reasonable efforts to ensure that a qualified medical specialist evaluated D.S.'s claim by eliciting

16   Dr. Winfrey's opinion.  Defendant argues that AR 04-01(9) does not require that a medical

17   professional review every piece of evidence in the record.

18       Section 1382c(a)(3)(I) of the Social Security Act provides:

19       In making any determination under this title ... with respect to the disability of an
         individual who has not attained the age of 18 years ..., the Commissioner of Social
20       Security *shall make reasonable efforts to ensure that a qualified pediatrician or
         other individual who specializes in a field of medicine appropriate to the*
21       *disability of the individual* (as determined by the Commissioner of Social
         Security) evaluates the case of such individual.
22

23   Howard ex rel. Wolff v. Barnhart, 341 F.3d 1006, 1013 (9th Cir. 2003) (citing 42 U.S.C.

24   1382c(a)(3)(I) (emphasis added)).

25       In Howard, the Ninth Circuit remanded the matter because it found that the ALJ did not

26   attempt to have the minor child's case evaluated in its entirety.  Howard, 341 F.3d at 1014.  The

27   Ninth Circuit interpreted Section 1382(A)(3)(I) of the Social Security Act to mean that an ALJ is

28   required to make reasonable efforts to obtain a case evaluation, based on the record in its

1  entirety, from a pediatrician or other appropriate specialist, rather than simply evaluating the

2  evidence in the case record on his or her own.  Id.

3  After Howard, the Social Security Administration issued Social Security Acquiescence

4  Ruling 04-1(9), which states that both "ALJs and AAJs (when the Appeals Council makes a

5  decision) must make reasonable efforts to ensure that a qualified pediatrician or other individual

6  who specializes in a field of medicine appropriate to the disability of the individual (as identified

7  by the ALJ or AAJ) evaluates the case of the individual."  AR 04-1(9).

8  Here, Dr. Winfrey did not receive a copy of Exhibit 13E prior to the hearing.  (AR 42.)

9  During the hearing, the ALJ summarized parts of Exhibit 13E.  (AR 66-69.)  However, the ALJ's

10  summary did not contain all of the incidents involved in Exhibit 13E.  After the ALJ said her

11  summary of Exhibit 13E, Plaintiff and D.S.'s counsel had a chance to comment and summarize

12  Exhibit 13E.  (AR 69-73.)  Plaintiff and D.S.'s counsel indicated that the ALJ did not state all of

13  the things on the forms and only selected a few of them.  (AR 72.)  The ALJ indicated that it was

14  counsel's fault for not providing Exhibit 13E earlier.  (AR 72.)  After the summary of Exhibit

15  13E, Plaintiff and D.S.'s counsel requested that Exhibit 13E be sent to the medical expert so she

16  could see it and not have to rely just on the "brief summary of them described on the record."

17  (AR 77.)  However, the ALJ did not send Exhibit 13E to Dr. Winfrey.  Although Defendant

18  contends that Plaintiff and D.S.'s counsel discussed the disciplinary records in detail with Dr.

19  Winfrey, the discussion was a general one and did not specify the number of incidents or any

20  details of the incidents.  (AR 85-86.)

21  When the Court compares Exhibit 13E to the ALJ's summary and Plaintiff and D.S.'s

22  counsel's discussion and comments on Exhibit 13E, there are details of incidents as well as entire

23  incidents that were not discussed with Dr. Winfrey.

24  The ALJ relied upon Dr. Winfrey's opinion to find that D.S. has less than marked

25  limitation in interacting and relating with others.  (AR 28-29.)  While Defendant contends that

26  Dr. Winfrey opined that Plaintiff did not have a marked limitation in social interaction based on

27  D.S.'s friendships and the lack of school intervention in the form of a 504 plan or IEP, Dr.

28  Winfrey also cited the fact that Plaintiff had no legal trouble and "other things, too that I looked

1 at that would give someone a marked rating in my mind that she doesn't have."  (AR 86-87.)

2 When Plaintiff and D.S.'s counsel asked Dr. Winfrey how many episodes at school of fighting,

3 biting, cursing, disrespect, and walking out of classrooms would qualify as a marked limitation,

4 Dr. Winfrey responded that there is not a number, per se, but it is a "combination of the degree of

5 the incidents and the frequency, as well as the school's response."  (AR 87-88.)  Dr. Winfrey

6 then testified that a school typically instigates or should instigate an IEP when it sees problems in

7 a marked or a severe range.  (AR 88.)  Therefore, the Court finds that D.S.'s disciplinary records

8 may have factored into Dr. Winfrey's decision to rate D.S. as less than marked in social

9 interaction.

10        The Court finds that it cannot say that a review of Exhibit 13E in its entirety may not

11 have changed Dr. Winfrey's opinion.  Therefore, the Court finds that this matter should be

12 remanded.

13              **B.       The Action Shall be Remanded for Further Administrative Proceedings**

14        Plaintiff seeks a remand under §405(g), but she does not specify whether she is seeking a

15 remand for benefits or a remand for further administrative proceedings.  Plaintiff did say in her

16 discussion of D.S.'s file, that the matter should be remanded so a medical expert can review

17 D.S.'s file in its entirety.    Defendant contends that any remand should be for further

18 administrative proceedings.

19        The ordinary remand rule provides that when "the record before the agency does not

20 support the agency action, ... the agency has not considered all relevant factors, or ... the

21 reviewing court simply cannot evaluate the challenged agency action on the basis of the record

22 before it, the proper course, except in rare circumstances, is to remand to the agency for

23 additional investigation or explanation."  Treichler v. Comm'r of Soc. Sec. Admin., 775 F.3d

24 1090, 1099 (9th Cir. 2014).  This applies equally in Social Security cases.  Treichler, 775 F.3d at

25 1099.

26        Under the Social Security Act "courts are empowered to affirm, modify, or reverse a

27 decision by the Commissioner '*with or without* remanding the cause for a rehearing.' "  Garrison

28 v. Colvin, 759 F.3d 995, 1019 (9th Cir. 2014) (emphasis in original) (quoting 42 U.S.C. §

405(g)).  The decision to remand for benefits is discretionary.  <u>Treichler</u>, 775 F.3d at 1100.  In Social Security cases, courts generally remand with instructions to calculate and award benefits when it is clear from the record that the claimant is entitled to benefits.  <u>Garrison</u>, 759 F.3d at 1019.

In this instance, it is not clear that D.S. would be entitled to benefits.  The record needs to be further developed regarding D.S.'s school disciplinary records at Exhibit 13E.  The Court also notes that on remand, the entire record should be considered, including D.S.'s IEP at Exhibit 15E.  Accordingly, the Court finds that this action shall be remanded for further administrative proceedings.

**C.      The Court Declines to Address Plaintiff's Arguments Regarding Credibility and Dr. Bartell's Opinion**

Plaintiff argues that the ALJ erred in evaluating her testimony and that the ALJ erred in rejecting Dr. Bartell's opinion.  The ALJ's findings regarding credibility and Dr. Bartell's opinion may change once the record is further developed on remand regarding Exhibits 13E and 15E.  On remand, the ALJ will have the opportunity to reassess the credibility of Plaintiff and D.S. and the weight given to Dr. Bartell's opinion in light of the further-developed record.  Therefore, the Court declines to further address these arguments at this time.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

**V.**

**ORDER**

Accordingly, IT IS HEREBY ORDERED that:

1.   Plaintiff's appeal from the decision of the Commissioner of Social Security is GRANTED IN PART;

2.   Defendant's motion for summary judgment is DENIED;

3.   This action is remanded back to the Commissioner for further administrative proceedings consistent with this opinion; and

4.   The Clerk of the Court is directed to CLOSE this action.

IT IS SO ORDERED.

Dated:   __**March 21, 2017**__

UNITED STATES MAGISTRATE JUDGE

13